UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:20-CR-42-HAB |
| ) | |
| ADAM D. McGIBNEY ) | |

**OPINION AND ORDER**

On July 27, 2020, Magistrate Judge Susan Collins entered an Order of Detention Pending Trial. (ECF No. 16). In that Order, Magistrate Collins concluded "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (*Id*. at 2). Defendant now appeals that decision to this Court pursuant to 18 U.S.C. § 3145(d).

**A.     Factual Background**

This matter arises out of a traffic stop in late July 2020. Defendant was the sole occupant of the vehicle that was stopped. When Defendant consented to a search of the vehicle, officers found a cocked and loaded pistol with an additional loaded magazine in the back of his pants, ammunition, an unloaded short barrel rifle ("SBR"), an unloaded shotgun, a tactical vest containing multiple loaded magazines for the SBR, a small arms protective insert for the vest, medical supplies, and rope. Defendant admitted that he knew the barrel of the SBR was short and that it was not registered. As a result, Defendant has been indicted on a single charge of possession of an unregistered short-barrel rifle in violation of 26 U.S.C. §§ 5841 and 5861(d).

The Government moved for pretrial detention and a hearing was held on the issue. The evidence showed that Defendant is a 25-year-old resident of California. He was honorably discharged from the United States Marine Corps. During his service with the Marines, Defendant

received several awards and commendations, including: the Marine Corp Good Conduct Medal; the National Defense Service Medal; Global War on Terrorism Expeditionary Medal; the Global War on Terrorism Service Medal; the Sea Service Deployment Ribbon; the Expert Rifle Qualification Badge; and the Sharp Shooter Pistol Qualification Badge. Defendant continues to serve in the Marine Corps Reserves.

After his honorable discharge from the Marine Corps, Defendant began attending Santa Monica College. Over the course of 47 credit hours of classes he achieved a perfect 4.0 grade point average. As a result of his academic success, Defendant has been accepted for admission to the University of California – Berkeley for the Fall 2020 semester.

Defendant has no prior criminal history of any kind. In addition, he has no history of alcohol or controlled substance abuse. The instant case appears to be his first contact with law enforcement of any kind.

In contrast to this immaculate background, Defendant's phone contained troubling evidence. On April 18, 2020, Defendant texted another individual stating:

> Saddle up the horses, strap on our armor, load our rifles, and storm the seats of power of the tyrants that are slowly eroding away at our freedoms while society accepts it in order to feel a false sense of safety?

(July 27, 2020, Detention Hearing, Government Exhibit 1). Defendant had two photographs on his phone, one from July 19, 2020, and the second from June 29, 2020, depicting Ku Klux Klan regalia. The second picture depicted a scarecrow in KKK garb in the middle of a watermelon patch with the caption: "How to protect your watermelon farm". (*Id*., Government Exhibit 2 and 3).

Defendant's phone also contained several internet memes. The first, depicting a man wearing night vision goggles and sporting a "BOOGALOO CRUE" tattoo turning down a beverage, bears the caption: "Oh I don't vote just armed revolution for me thanks." (*Id*.,

2

Government Exhibit 8) (all sic). The second shows a photograph of what appears to be a grenade launcher attachment for a rifle alongside a black rubber phallus. The meme reads: "Boogaloo side quest 1267: Knock an alphabet boi[1] unconscious with a headshot from the dildo cannon[.] Achievement unlocked: head 2 head. (*Id*., Government Exhibit 9). A third meme contained photographs of what the meme purports to be "[e]very person charged with or arrested for shooting 4+ people in a single incident" during 2019. (*Id*., Government Exhibit 10).

The next meme was found in a text message sent by Defendant to another individual. It shows a hand grenade placed in a "fetchit stick," a plastic stick generally used for throwing balls to dogs. The caption reads: "Boogaloo side quest #4278[:] Yeet[2] a hand grenade into a group of alphabet bois with a "Fethcit" stick[.] Achievement: Who's a good boy?" (*Id*., Government Exhibit 12). Finally, Defendant's phone contained a meme displaying several different firearms topped with the hashtag "#allgunlawsareinfringements". The meme also contained a photo of, and quote from, George Orwell: "But if thought corrupts language, language also corrupts thought." (*Id*., Government Exhibit 17).

The last item pulled from Defendant's phone was a text conversation between Defendant and a Staff Sergeant Renner. In the conversation, Defendant asks whether Renner can make a suppressor on a 3D printer. (*Id*., Government Exhibits 13–16). Renner advises that he cannot make the suppressor on a 3D printer, but that he may be able to make it on a CNC lathe. Renner ends the conversation by telling Defendant that Renner would ask a machinist at his work whether the suppressor could be manufactured.

---

[1] "Alphabet boi" or "alphabet boy" is a slang term for a federal agent, referencing the acronym-heavy naming conventions for the respective agencies (i.e., FBI, ATF, DEA, etc.). Urban Dictionary, alphabet boys, https://www.urbandictionary.com/define.php?term=alphabet%20boys.
[2] "Yeet" means "to discard an item at a high velocity." Urban Dictionary, yeet, https://www.urbandictionary.com/define.php?term=Yeet.

After hearing this evidence and argument from counsel, Magistrate Collins ordered Defendant detained pending trial. As noted above, Magistrate Collins based her decision on a finding that Defendant posed a danger to the community. In support of that finding, Magistrate Collins stated:

> The Court has reviewed the evidence, exhibits, the pretrial services report, and its addendum. While Defendant has no criminal history, was honorably discharged from the Marine Corp, is a stellar college student, and has no significant alcohol or substance abuse history, the Court finds that the weight of the evidence is strong against Defendant, he is subject to a lengthy period of incarceration if convicted, and he has no ties to the Northern District of Indiana.
>
> While the Court recognizes Defendant's first amendment right with regard to the communications found within his phone, and does not base its decision today on those communications alone, the Court does take into consideration threats articulated towards the federal law enforcement commmunity [sic] in conjunction with the evidence found in the possession of Defendant at the time of his arrest---an assault weapon and other firearms, ammunition, and a tactical vest. Evidence also suggests that Defendant was in the process of obtaining an illegal silencer for his weapon.
>
> Defendant has articulated an anti-government, anti-law enforcement mindset in his communications (e.g., throwing hand grenades at federal officers or shooting federal officers). This evidence, coupled with the weapons found in Defendant's possession, raises serious concerns to the Court both for the safety of the community at large, and more specifically, as to the safety of the federal law enforcement community. If he were to be released, the U.S. Pretrial Services officers would need to monitor him and the U.S. Marshals would need to locate him if he were to fail to appear for court proceedings.
>
> Thus, the nature of Defendant's offense, combined with evidence of threats to federal law enforcement, cause the Court to conclude, by clear and convincing evidence, that no condition or combination of conditions of release can be fashioned for Defendant that will reasonably assure the safety of any other person and the community.

(ECF No. 16 at 3).

**B.     Legal Discussion**

Title 18 U.S.C. § 3145(b) permits a defendant to file a motion seeking review or revocation of a detention order when the defendant has been "ordered detained by a magistrate judge, or by a

person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court [.]" Section 3145(b) does not require that new evidence or information be available before a detention order can be reconsidered and revoked, id., and "[t]he standard of review for the district court's review of a magistrate judge's detention . . . order . . . is de novo." *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003). "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992); *see also United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985); *United States v. Sallay*, 2011 WL 1344288 at *4 (N.D. Ind. April 8, 2011); *United States v. Stephens*, 2007 WL 2164248 at *3 (N.D. Ind. July 25, 2007); *United States v. Boxley*, 2007 WL 79176 at * 1 (N.D. Ind. Jan. 8, 2007); *United States v. McManus*, 2006 WL 3833314 at *1 (N.D. Ind. Dec. 5, 2006).

Nonetheless, a district court may review a magistrate's detention order without holding a new hearing. *United States v. Bergner*, 800 F.Supp. 659 (N.D. Ind. 1992) (citing *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987); *United States v. Phillips*, 732 F.Supp. 255, 259 (D. Mass. 1990)). "An evidentiary hearing is necessary only if the party requesting the hearing raises a significant disputed factual issue." *United States v. Sophie*, 900 F.2d 1064, 1070 (7th Cir. 1990). While Defendant initially requested a hearing, he has withdrawn that request in his most recent filing. (ECF No. 26 at 4). Accordingly, the court takes a fresh look at the issue of detention without holding a new hearing, but with reference to the evidence presented at the one held before the Magistrate Judge.

The Bail Reform Act ("BRA") limits the circumstances under which a district court may order pretrial detention. *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). "When a

5

motion for pretrial detention is made, the court engages in a two-step analysis: first, the judicial officer determines whether one of ten conditions exists for considering a defendant for pretrial detention; second, after a hearing, the judicial officer determines whether the standard for pretrial detention is met." *United States v. Thomas*, 2011 WL 5386773 at *3 (S.D. Ind. Nov. 7, 2011) (citing *Friedman*, 837 F.2d at 49). There is no doubt that one of the ten threshold conditions for considering pretrial detention is met in this case. Defendant is alleged to have committed a crime that involves the possession of a firearm, see 18 U.S.C. § 3142(f)(1)(E), and the government's proffer was sufficient to demonstrate those allegations by a preponderance of the evidence. *See Thomas*, 2011 WL 5386773 at *3 (citing *Friedman*, 837 F.2d at 49; *United States v. DeBeir*, 16 F.Supp.2d 592, 595 (D. Md. 1998); *United States v. Carter*, 996 F.Supp. 260, 265 (W.D.N.Y. 1998)). The dispute, then, is over whether the standard for pretrial detention is met.

"Pretrial detention is allowed only after the court holds a hearing and finds that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.' " *Miller v. Hastings*, 87 Fed. Appx. 585, 586 (7th Cir. 2004) (citing 18 U.S.C. § 3142(e)). Detention may be based on a showing of either dangerousness or risk of flight; proof of both is not required. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). The Government bears the burden of proving that the defendant is either a flight risk or a danger to the community. *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985). With respect to reasonably assuring the safety of any other person and the community, the United States bears the burden of proving its allegations by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Salerno*, 481 U.S. 739 (1987). Clear and convincing evidence is something more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 431–33 (1979). With respect to reasonably assuring the

appearance of the defendant, the United States bears the burden of proof by a preponderance of the evidence. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985); *United States v. Liebowitz*, 652 F.Supp. 591, 596 (N.D. Ind. 1987).

The specific factors to be considered in a detention ruling are set forth in 18 U.S.C. § 3142(g):

> Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Court will address each factor in turn.

**1.** *Nature and Circumstances of the Offense*

The Court agrees with Defendant that the instant offense, in and of itself, is not particularly serious. It is not one of the offenses for which detention is presumed. *See* 18 U.S.C. § 3142(e)(3).

As Defendant notes, possession of an SBR is not inherently illegal; it is the failure to register the firearm that gives rise to the charge. The Court would further note that Defendant was cooperative with the officers during the traffic stop, seemingly doing nothing to inhibit or interfere with their investigation.

However, the offense is more serious than Defendant proposes. In his filings to this Court, Defendant represents that "a quick sentencing guideline calculation reveals that [Defendant] would likely fall into a recommended range of 0-6 months." (ECF No. 18 at 7). The Court does not find this calculation to be accurate. Under USSG § 2K2.1(a)(5), Defendant's base offense level would be 18 since the offense involved a firearm described in 26 U.S.C. § 5845(a). *See* 26 U.S.C. § 5845(a)(3) (defining a "firearm" as "a rifle having a barrel or barrels of less than 16 inches in length."). Even with a criminal history score of zero, Defendant would still face a base guideline range of 27–33 months. *See* U.S. Sentencing Guideline Manual – Sentencing Table, https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2016/Sentencing_Table.pdf. Ultimately, the Court finds this factor to be neutral.

**2.**     *Weight of the Evidence*

Here, the weight of the evidence against Defendant is strong. The record reflects that Defendant admitted that the SBR had a short barrel and that he had not registered the firearm. If substantiated, this is all the evidence required to establish the elements of the charged crime. 26 U.S.C. § 5861(d). The Court is cognizant of the presumption of innocence, and it understands that Defendant intends on filing challenges to the evidence, but it must conclude that the weight of the evidence supports detention.

### 3. *History and Characteristics of Defendant*

Defendant's history and characteristics present a mixed bag. Defendant is to be recognized and congratulated for his honorable and decorated service to this country in the Marines. Certainly, his academic record is beyond reproach. Defendant has strong family ties as evidenced by the affidavit of his aunt. He has no history of drug or alcohol abuse. Finally, Defendant has no criminal history whatsoever.

On the other hand, Defendant has no ties to northern Indiana. He lives in California and was simply passing through the area when he was arrested. The two places Defendant has proposed to live should he be released, California and South Dakota, are well beyond the boundaries of this district.

Most troubling, however, is Defendant's apparent membership in the Boogaloo organization. A February 2020 report by the Rutgers University Miller Center for Community Protection and Resilience found:

> The boogaloo, a joke for some, acts as a violent meme that circulates instructions for a distributed, viral insurgency for others. The topic network for boogaloo describes a coherent, multi-component and detailed conspiracy to launch an inevitable, violent, sudden, and apocalyptic war across the homeland. The conspiracy, replete with suggestions to stockpile ammunition, may itself set the stage for massive real-world violence and sensitize enthusiasts to mobilize in mass for confrontations or charged political events. Furthermore, the meme's emphasis on military language and culture poses a specific risk to military communities due to the similar thematic structure, fraternal organization, and reward incentives.

Alex Goldberg and Joel Finkelstein, Network Contagion Research Institute, <u>Cyber Swarming, Memetic Warfare and Viral Insurgency: How Domestic Militants Organize on Memes to Incite Violent Insurrection and Terror Against Government and Law Enforcement</u>, February 7, 2020, https://risc.rutgers.edu/sites/default/files/inline-images/NCRI%20White%20Paper%20-%20Feb10%20v3%5B3746%5D.pdf. Members of the organization have been implicated in the

May 2020 murder and attempted murder of law enforcement officers in California. Katie Shepard, Washington Post, <u>An officer was gunned down. The killer was a 'boogaloo boy' using nearby peaceful protects as cover, feds say.</u>, June 17, 2020, https://www.washingtonpost.com/nation/2020/06/17/boogaloo-steven-carrillo/. Boogaloo was specifically referenced in a recent Justice Department memo establishing a task force to investigate anti-government extremists as an organization that will "pose continuing threats of lawlessness." United States Attorney General Memorandum, <u>Department of Justice Task Force on Violent Anti-Government Extremists</u>, June 26, 2020, https://int.nyt.com/data/documenthelper/7049-barr-antigovernment-violence/0d3f6cf3141a98bfa279/optimized/full.pdf#page=1. The organization appears, by all accounts, to be a fledgling home for domestic terrorism.

Membership in a criminal organization is a factor that can be considered in making a detention determination. *United States v. Defede*, 7 F.Supp.2d 390 (S.D.N.Y. 1998); *United States v. DiGiacomo*, 746 F.Supp. 1176 (D. Mass. 1990). True, being a Boogaloo is not illegal. Nor is it illegal to harbor anti-government sentiments. But the Court is not determining guilt or innocence at this point. Rather, it is taking stock of Defendant's history and characteristics. The Court finds that membership in an organization that advocates for a second civil war, killing law enforcement along the way, speaks poorly of Defendant's character. Accordingly, this factor weighs in favor of detention.

**4.**     *Nature and Seriousness of the Danger Posed to the Community*

Defendant raises several arguments[3] in support of his claim that he does not pose a danger to the community. First, he argues that none of the items he possessed are inherently illegal. The

---

[3] Defendant makes a passing mention that his detention may violate his First Amendment rights. (ECF No. 18 at 5). However, this argument is underdeveloped. This Court deems it waived. *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011).

Court agrees that all the items could be legally possessed. However, that fact alone is not dispositive of the consideration of dangerousness. "It is also legal to purchase and own fertilizer and diesel fuel, but if a person who has made threats against the government purchases large quantities of both, it creates a different, more dangerous, implication." *United States v. Stone*, 608 F.3d 939, 948 n.8 (6th Cir. 2010). So it is here. There may be any number of reasons why an individual would travel across the country with more firepower than luggage. That fact alone does not, necessarily, raise suspicion. But when that same person is a member of a burgeoning domestic terrorist organization and has endorsed, if not advocated, violence against law enforcement, the circumstances must be viewed in a different light.

The Court is also troubled by Defendant's apparent unwillingness to leave the Boogaloo organization even after his arrest. One of the individuals identified by Defendant as a potentially housing the Defendant upon his release was Robert Witherspoon, a friend in South Dakota. (ECF No. 13 at 1). This Court has little trouble concluding that Mr. Witherspoon is the Robert W. that received the text from Defendant containing the grenade throwing meme. (July 27, 2020, Detention Hearing, Government Exhibit 12). Robert W.'s response to the idea of throwing a grenade into a group of federal agents was "I love it I'm definitely hit this . . ." (all sic) (*Id*.). Thus, while Defendant is correct that his firearms have been seized as a result of his arrest, his plan as late as July 24, 2020, was to live with an individual who owns firearms (*see* ECF No. 13 at 1) and shares Defendant's violent anti-government beliefs.

Defendant also argues that the entirety of the Government's presentation focuses on what Defendant "may" do, rather than put forward specific examples of violent behavior. The Court finds that this argument misses the mark. Whether a defendant poses a danger to the community if released is always a question that implicates the probability of future conduct. This fact alone does

not render the consideration of what might occur problematic. *Salerno*, 481 U.S. at 747. Moreover, "there is nothing inherently unattainable about a prediction of future criminal conduct." *Id*. at 751 (quoting *Schall v. Martin*, 467 U.S. 253, 278 (1984)).

Defendant's argument, of course, ignores the fact that there is evidence of other illegal conduct in this case. Just as Defendant possessed an SBR without appropriate registration, he also was actively seeking to obtain a homemade suppressor. Suppressors are subject to the same registration requirements as an SBR. *See* 26 U.S.C. § 5845(a)(7); § 5861(d). Defendant, then, was actively seeking to violate another law at the time of his arrest.

Defendant's repeated attempts to circumvent federal registration of his firearms further concerns the Court. Items like SBRs and suppressors have little use other than to increase the efficiency by which an individual can kill large numbers of people. It is for this reason, among others, that they are subject to registration. The fact that Defendant wants to keep his possession of these items a secret raises an obvious question: what is he planning on doing with them? Why doesn't he want the government to know he has them? Defendant has provided no satisfactory answer to these questions.

At this point the Government, the United States Probation Office, and Magistrate Collins have all reviewed the facts and circumstances of this case and concluded that Defendant poses a risk to the community, and law enforcement specifically. The Court finds no reason to disagree. This factor weighs in favor of detention.

After reviewing the entirety of the evidence presented at Defendant's detention hearing, the Court concludes that the Government showed, by clear and convincing evidence, that Defendant poses a danger to other individuals and the community. Therefore, the Court finds no error in Magistrate Collins' conclusion that Defendant should be detained pre-trial.

C.	**Conclusion**

For the foregoing reasons, Defendant's Motion for Revocation of Detention Order and Request for Expedited Hearing is DENIED.

SO ORDERED on August 14, 2020.

 s/ Holly A. Brady  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT
