UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Cause No: 1:20-CR-42 |
| | ) | |
| ADAM D. McGIBNEY | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**FIRST AND SECOND MOTIONS TO SUPPRESS**

Comes now the United States of America by Sarah E. Nokes, Assistant United States Attorney for the Northern District of Indiana, and files the government's Response to Defendant's First and Second Motions to Suppress filed October 16, 2020 as DEs 28 and 29. In his first motion, the defendant, Adam D. McGibney ("McGibney"), by counsel, moves the Court to suppress evidence found in McGibney's vehicle, alleging that McGibney was subject to an illegal stop and seizure and that the search which recovered evidence from his vehicle violated his Fourth Amendment rights. In his second motion, McGibney argues that incriminating statements he made should be suppressed as violative of his Fifth Amendment rights. The government contends that none of McGibney's rights were violated and there is no basis for suppression. The government joins McGibney's request for an evidentiary hearing on these matters.

1

THE STOP

On July 19, 2020 at approximately 11:54pm, Indiana State Police ("ISP") Probationary Trooper George Youpel ("Trpr. Youpel") observed a Lincoln Town Car in the area of the 108 mile marker of the Indiana Toll Road (I-80) in LaGrange County in the Northern District of Indiana. Trpr. Youpel observed the Town Car make two lane changes without signaling properly. Trpr. Youpel first observed the Town Car travel from the right to the left lane of traffic. The vehicle did not signal the lane change until it had already passed over the lane divider line. Trpr. Youpel then observed that after passing a truck, the Town Car signaled a lane change from the left to the right lane. However, the Town Car ceased signaling prior to traveling into the right lane. Trpr. Youpel initiated a traffic stop upon the vehicle and found it to be driven by McGibney.

A traffic stop is a Fourth Amendment seizure of the occupants of the stopped vehicle and must therefore be reasonable. *See Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014). A traffic stop is reasonable if the initiating officer has probable cause to believe that the driver of the vehicle has committed a traffic offense. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005); *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000).

Trpr. Youpel had probable cause to believe that the driver of the Town Car had committed two traffic offenses at the time he initiated a traffic stop of

the vehicle, each violations of Indiana Code § 9-21-8-25[1] requiring drivers to continuously signal an intention to change lanes at least 300 feet prior to making the lane change when driving in a speed zone of at least 50 miles per hour. Based on his observations of McGibney's lane changes, Trpr. Youpel possessed probable cause to believe that McGibney had twice violated the statute. Therefore the traffic stop and resulting seizure of the McGibney was reasonable and did not violate his Fourth Amendment rights.

STATEMENTS MADE AT THE SCENE OF THE STOP

After McGibney stopped his vehicle, Trpr. Youpel approached, advised him of the reason for the traffic stop and asked for McGibney's driver's license and vehicle registration. As McGibney leaned over to retrieve the vehicle registration from the glove compartment, Trpr. Youpel observed a bulge on McGibney's back right side and a fixed blade knife in a sheath on the passenger seat. Trpr. Youpel asked McGibney if there were any weapons inside the vehicle, and McGibney stated that there were. Trpr. Youpel asked if there were any firearms in the vehicle, and McGibney stated that he had a firearm on his right hip. Trpr. Youpel asked McGibney if he had a permit to carry a handgun in any state. McGibney replied that he did not need or possess a permit. Trpr.

---

[1] "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes. A vehicle traveling in a speed zone of at least fifty (50) miles per hour shall give a signal continuously for not less than the last three hundred (300) feet traveled by the vehicle before turning or changing lanes." IND. CODE § 9-21-8-25.

Youpel asked McGibney additional questions about the name listed on his license and his origin of travel. Trpr. Youpel also asked McGibney if there were other firearms in the vehicle, and McGibney stated that there was a shotgun and rifle in the trunk. Trpr. Youpel asked McGibney if he could retrieve the firearm from McGibney's hip. McGibney consented and Trpr. Youpel removed a loaded, .45 caliber handgun from McGibney's person. Trpr. Youpel secured McGibney's handgun and then asked him to step out of the vehicle and placed him in handcuffs.[2]

Subject to limited exceptions, persons subjected to custodial interrogation must be advised of their rights under *Miranda v. Arizona*. 384 U.S. 436, 444 (1966). However, individuals temporarily detained pursuant to traffic "stops are not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). A short, roadside questioning of a stopped motorist by police does not constitute custodial interrogation, even if the questions asked by the officer are unrelated to the reason for the initial traffic stop. *United States v. Kelly*, 991 F.2d 1308, 1313 (7th Cir. 1993). Trpr. Youpel's short, roadside questioning of McGibney about whether he had weapons or firearms and whether he had a permit to carry a handgun did not constitute custodial interrogation pursuant to *Miranda*, and thus *Miranda* warnings

---

[2] Carrying a handgun on or about a person's body or in a vehicle without a license to carry such a firearm is a misdemeanor offense unless certain exceptions apply. *See* IND. CODE. 35-47-2-1.

were not required during that stage of the encounter. "[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer*, 468 U.S. at 440 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). McGibney became subject to custody for purposes of *Miranda* when he was placed into handcuffs after the trooper's discovery that he was unlicensed to carry a handgun and nonetheless had one on his person. As the conversation which preceded the use of handcuffs did not constitute custodial interrogation, there was no Fifth Amendment *Miranda* violation.

Additionally, pursuant to *Miranda*'s public safety exception, Trpr. Youpel, upon seeing at least one weapon in the vehicle and suspecting that more may be present, had the right to ask McGibney about them without need of first providing *Miranda* advisements pursuant to *Miranda*'s public safety exception. The public safety exception allows officers to ask limited questions of subjects – even subjects who *are* in custody – about weapons in order to safeguard themselves and others. *See New York v. Quarles*, 467 U.S. 649, 657 (1984); *see also United States v. Simpson*, 974 F.2d 845, 847 (7th Cir. 1992)(Officer's unmirandized questions to suspect about whether he owned weapons and whether he had a firearm owner's ID card did not violate suspect's Fifth Amendment rights.). Even if McGibney had been in custody during the traffic stop encounter prior to the use of cuffs, the officer's questions

about weapons after seeing at least one weapon in the vehicle and reasonably suspecting that others might be present, would have been appropriate to ensure that no law enforcement officers or other passersby were harmed by such weapons.

THE SEARCH

After handcuffing McGibney, Trpr. Youpel advised him of his *Miranda* rights, which McGibney indicated he understood. Trpr. Youpel again asked if McGibney had a permit to carry the firearm he had removed from McGibney's person, and McGibney said that he did not know he needed one. Trpr. Youpel asked McGibney if he could search the vehicle, and McGibney said yes. Trpr. Youpel asked McGibney if there was anything illegal in the vehicle and McGibney said there "shouldn't be." Trpr. Youpel searched the vehicle and found *inter alia*, a container with handgun and shotgun ammunition, a ballistic plate, six AR-15 magazines (two of which were loaded), a tactical vest with armored plates, five fully loaded magazines with armor piercing rounds, two fully loaded .45 caliber handgun magazines, an unloaded 12-gauge shotgun and an unloaded AR-15 style rifle with no serial number. Trpr. Youpel asked McGibney additional questions about the items he found in the search. The barrel of the AR-15 style rifle was later found to measure approximately 11 3/8 inches long, classifying it as a short barreled rifle, a weapon which must be registered pursuant to 26 U.S.C. §§ 5841 and 5845. The vehicle was later towed

6

from the scene of the traffic stop.

The defendant argues that his Fourth Amendment rights were violated by the search and seizure of firearms evidence from his vehicle without a search warrant. The search and seizure did not violate McGibney's Fourth Amendment rights because he consented to the search of his vehicle. It is well-settled that an exception to the Fourth Amendment's warrant requirement is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Consent must be voluntarily given, and the government must prove the voluntariness of consent by a preponderance of evidence. *United States v. McGraw*, 571 F.3d 624, 628 (7th Cir. 2009). Several factors bear on the analysis, including:

> (1) the person's age, intelligence, and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent.

*United States v. Raibley*, 243 F.3d 1069, 1075–76 (7th Cir. 2001). McGibney was in custody at the time he gave consent for Trpr. Youpel to search his vehicle, but the government asserts that all other factors, which will be further developed by officer testimony at an evidentiary hearing in this matter, weigh in favor of a finding that his consent was voluntarily given. Because McGibney voluntarily consented to the search of his vehicle, the seizure of contraband

found within the vehicle did not violate McGibney's Fourth Amendment rights.

Additionally, even if McGibney had not consented to the search of his vehicle, the vehicle would nonetheless have been subject to a valid inventory search prior to being towed from the side of the interstate, and thus the items of evidence in McGibney's vehicle would have been inevitably discovered. "Warrantless inventory searches of impounded vehicles by authorities pursuant to a standard police policy or procedure do not violate the Fourth Amendment." *United States v. Velarde*, 903 F.2d 1163, 1165 (7th Cir. 1990) (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976)). Such an inventory search "is constitutionally permissible if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search satisfies the Fourth Amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *Id* (internal citations omitted). In this case, McGibney was lawfully arrested for carrying a handgun without a permit. His vehicle was towed from the side of the interstate in accordance with ISP policy and procedures, and even if he had not already consented to a search of the vehicle, it would have been lawfully searched pursuant to an inventory of its contents.

STATEMENTS MADE AT THE LAGRANGE COUNTY JAIL

After the events of the traffic stop described above, McGibney was

8

arrested and booked into the LaGrange County Jail on state charges. On July 20, 2020 at approximately 3:38 p.m., Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Task Force Officer ("TFO") Anderson conducted an audio-recorded, custodial interview of McGibney at the LaGrange County Jail. After asking identifying questions, TFO Anderson advised McGibney of his *Miranda* rights. TFO Anderson asked McGibney if he understood his rights, and McGibney stated that he did. TFO Anderson asked McGibney if he had any questions about his rights, and McGibney asked, "When can I get a lawyer?" TFO Anderson responded that he could get a lawyer "Whenever you want one," and then asked, "Do you wanna [sic] answer any questions I have?" McGibney stated that it "depend[ed] on the questions." TFO Anderson told McGibney that he was not required to answer any questions and to stop him if there was something he did not want to answer. Thereafter, TFO Anderson spoke to McGibney about, *inter alia*, McGibney's lack of handgun carry permit, the provenance of the AR-15 style rifle, McGibney's lack of registration of the rifle with the ATF and McGibney's knowledge of the length of the barrel. McGibney made incriminating statements about his ownership of the short barreled rifle, his knowledge that the barrel length was approximately 11 inches and his failure to register the firearm as required by federal law. McGibney refused to divulge the name of the person from whom he had obtained the short barrel of the rifle. TFO Anderson asked McGibney if he would consent to a search of his

cell phone. McGibney denied consent to search the phone.

A suspect in custody has the absolute right to speak with an attorney before answering any questions from law enforcement officers and to have his attorney present while answering questions. If the suspect requests counsel at any time during the interview, he may not be subjected to further questioning until an attorney has been made available to him. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," officers need not end the interview. *Davis v. United States*, 512 U.S. 452, 459 (1994). In order to invoke his right, "the suspect must unambiguously request counsel." *Id*.

In this case, after hearing his *Miranda* warnings for the second time that day, including those which advised him of his right to speak with an attorney before answering any questions and to have an attorney with him while answering any questions, McGibney asked TFO Anderson when he could get an attorney. McGibney did not request an attorney, he merely asked when he could get one. TFO Anderson accurately told him that he could get an attorney whenever he wanted one. McGibney did *not* say that he wanted an attorney or that he would prefer to speak with an attorney before answering questions. When TFO Anderson asked thereafter if McGibney wanted to answer his

10

questions, McGibney showed that he understood his rights, specifically his right not answer certain questions, as he told TFO Anderson that his desire to answer questions depended on what questions were asked. McGibney declined to answer some questions and declined to provide consent for a search of his phone. It is clear that McGibney understood his *Miranda* rights and chose to exercise certain of those rights during the interview. He did not clearly and unequivocally invoke his right to counsel at any time during the interview, and thus his Fifth Amendment right to counsel was not violated. Because he was properly advised of his *Miranda* warnings and because he did not unequivocally request the assistance of counsel, his statements should not be suppressed.

## CONCLUSION

WHEREFORE, based on the foregoing, the government submits that none of McGibney's constitutional rights were violated by law enforcement during the traffic stop and subsequent interview on July 19 and 20, 2020. For that reason, the government contends that the defendant's First and Second Motions to Suppress, filed on October 16, 2020 as DEs 28 and 29 should be DENIED. Should this matter be set for a hearing on the defendant's motion, the government anticipates that it will present evidence, in the form of law

enforcement testimony and a recorded interview, consistent with what has been presented in this response.

    Respectfully submitted,

    THOMAS L. KIRSCH II
    UNITED STATES ATTORNEY

    /s/ Sarah E. Nokes

By:  Sarah E. Nokes
    Assistant United States Attorney
    E. Ross Adair Federal Bldg.
    & U.S. Courthouse
    1300 S. Harrison Street, Room 3128
    Fort Wayne, IN 46802-3489
    Telephone: (260) 422-2595
    Facsimile:  (260) 426-1616
    E-mail Address:
    sarah.nokes@usdoj.gov