UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:20-CR-42 |
| ) | |
| ADAM D. McGIBNEY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION**

Comes now Defendant, Adam D. McGibney ("Mr. McGibney"), by counsel, to request the Court reconsider its August 14, 2020 Order upholding Magistrate Collins ruling to detain him without bail, stating in support as follows:

1. Mr. McGibney was arrested on or about July 19, 2020. On July 27, 2020, Mr. McGibney appeared for arraignment and detention hearing before Magistrate Judge Collins via videoconference. Following hearing, Mr. McGibney was ordered detained. (Dkt. 14).

2. On August 4, 2020, Mr. McGibney filed his Motion to Revoke Detention Order and Request for Expedited Hearing. (Dkt. 18).

3. On August 11, 2020, the Government filed its response to Mr. McGibney's motion. (Dkt. 21).

4. On August 13, 2020, Mr. McGibney filed his Reply Brief to the Government's Response. (Dkt. 26).

5. On August 14, 2020, the Court entered an Order denying Mr. McGibney's Motion to Revoke Detention Order and Request for Expedited Hearing. (Dkt. 27). Mr. McGibney has

remained in detention without bail since July 19, 2020. Since that time, the Court has permitted several scheduling extensions at the request of counsel for both parties, resulting in a lengthy period of pre-trial detention for Mr. McGibney.

6. Mr. McGibney has gathered new and additional pertinent facts in the interim that he believes merit the Court's reconsideration of its August 14 Order and his release from detention on reasonable conditions of bail.

7. *First*, the Court found that Mr. McGibney's history and characteristics "present a mixed bag" in part because, despite Mr. McGibney's decorated service, strong academic record, strong family ties, absence of any history of drug or alcohol abuse, and lack of prior criminal history, Mr. McGibney "has no ties to northern Indiana" and was "simply passing through the area when he was arrested." (Dkt. 27 at 9.)

8. To address the Court's concern regarding his ties to northern Indiana and availability for further proceedings in this matter, Mr. McGibney proposes that if released on reasonable terms of bail, he would immediately rent an apartment located in South Bend/Mishawaka, Indiana, within the Northern District, with counsel's assistance. This would provide Mr. McGibney much easier access to counsel and Pre-Trial Services, both of which are located in South Bend, and ensure his availability for further proceedings before the Court. In addition, Mr. McGibney wishes for the Court to know that he has close family nearby, in states adjacent to Indiana. His older brother, John David McGibney, resides at 1422 E. Main Street, Louisville, Ohio 44641; and his cousin, Alex Eskenazi-Gold, resides at 348 E. Maplehurst Avenue, Ferndale, Michigan 48220.

9. **Second**, the Court articulated its concern that Mr. McGibney is an "apparent member" of the Boogaloo organization and that the images recovered from his cell phone indicate that he poses a heightened risk to the community if released. (Dkt. 27 at 9-11.)

10. Mr. McGibney appreciates the Court's concerns regarding any suggestion, threat, or act of violence against any law enforcement authority, government institution, or individual. But Mr. McGibney is *not* a member of the Boogaloo organization, has never behaved in a manner depicted by the images cited by the Court, and vehemently denies any allegation that he would.

11. While the Court concluded in its August 14 Order that Mr. McGibney is or appears to be "a member of an organization that advocates for a second civil war," and is "unwilling[] to leave the Boogaloo organization" (Dkt. 27 at 9-11), the Government presented no evidence that Mr. McGibney is or ever was an actual member of the organization. Indeed, the Government acknowledged in its pleadings that Mr. McGibney denied being a member of the Boogaloo organization when asked that direct question shortly after his arrest. (*See* Dkt. 21 at 6.) In addition, Assistant U.S. Attorney Nokes has since informed Mr. McGibney's counsel that the Government had completed its review of Mr. McGibney's cell phone contents and found no additional information indicating that Mr. McGibney is a member of the Boogaloo Boys organization or any other group which condones or encourages violence against law enforcement or government authorities. Assistant U.S. Attorney Nokes further confirmed that the Government has located no additional evidence suggesting Mr. McGibney has ever engaged in or planned to engage in any acts of violence toward law enforcement or government authorities, or any other individual.

12. Attached hereto as Exhibits 1-7 are signed statements by individuals who know Mr. McGibney and can attest to his character. In the statements, Mr. McGibney is described as:

- an "honest, trustworthy, and down-to-earth person" (Ex. 1, Declaration of T.Cross, Sgt., U.S. Marine Corps, at ¶ 5);

3

- an "honest, trustworthy, and good person" and a "dependable person . . . I would count on" (Ex. 2, Declaration of K.Brady, Sgt., U.S. Marine Corps, at ¶¶ 5-6);

- a "trustworthy" and "extremely honorable man" (Ex. 3, Letter from K.Elliott, Sgt., U.S. Marine Corps);

- a "man you can consistently rely on" and who "would give you the shirt off his back" (Ex. 4, Letter from J. Webb, Sgt., U.S. Marine Corps);

- "an honest and trustworthy" person who "is always concerned about others above himself" (Ex. 5, Declaration of D.Machala at ¶ 3);

- "an upstanding individual and well-disciplined marine" (Ex. 6, Letter from A.Mata, U.S. Marine Corps); and

- "a man of principle" who chose to "contribute to something greater than himself" through the Marine Corps (Ex. 7, Declaration of T.O'Brien at ¶¶ 3-4).

13. These statements also disavow any allegation that Mr. McGibney adheres to extremist ideologies or would commit acts of violence if released, and emphasize that the images found on Mr. McGibney's cell phone are not an accurate representation of his character.

14. Taylor Cross, a Marine and current police officer in Janesville, Iowa, wrote that Mr. McGibney "is very different from the person depicted in the government's pleadings in this case. Adam is not a violent person and in all of my interactions with him has never espoused the anti-government and anti-police views that the government has attributed to him or given any suggestion that he intended to commit any actions of violence against the government or any individual. The internet 'memes' and other content taken from his phone, while serious and disturbing to many, do not paint an accurate picture of Adam as a person…." (Ex. 1 at ¶ 5.)

15. Cross continued: "Adam cares deeply for his family, his friends, and his country. . . . I have never felt or observed any ill-will from Adam towards myself or others in law enforcement. Indeed, many in the veteran community choose to serve in law enforcement after active duty, including others in Adam's circle of friends. In my experience, Adam has the utmost

respect for me and other law enforcement authorities. I also know that he has served his country with distinction and respects our institutions." (*Id.* at ¶ 6-7.)

16. Kyle Brady, a Marine, wrote that "Adam is not a violent person and has never exhibited any conduct that would suggest animosity or an intent to harm law enforcement officers or government institutions. To the contrary, many of Adam's close friends serve or have served in law enforcement, including myself and many others in the veteran community, and he respects the work that we do." (Ex. 2 at ¶ 7.)

17. Kade Elliott, a Marine, wrote that "We as Marines have a certain sense of humor that you could say is borderline morbid or indecent, but that does not mean we are bad people. Nor does it mean we are racist . . . . For many of us we use this type of humor as a defense mechanism to hide how truly terrified we are of our likelihood to die on the battlefield defending this country. This sense of humor travels with us our entire lives and I don't believe Adam should be punished for . . . his first amendment right to free speech." (Ex. 3.)

18. Jeffrey Webb, a Marine, wrote that Adam is not the "bigoted domestic terrorist that he is being made out to be," explaining: "Compartmentalizing these 'demons' [of military service] is difficult . . . but through brotherhood, the use of vulgar satire is part of a mechanism of coping. The kinds of social media images that the government is using to argue against Adam's pretrial release can be found on the phones of many Marines and other law-abiding citizens across the country. To hold Adam in detention simply because unpopular words and images were found on his phone violates his 1st Amendment rights and goes against everything we fought so vehemently to preserve." (Ex. 4.)

19. Daria Machala, a long-time friend of Mr. McGibney's from New York, wrote: "I have never known Adam to be violent or endorse violent activities. I also do not know him to have

any hatred or opposition to the government or law enforcement. He served his country honorably and is proud of his service. The images and messages found on his cell phone are not who he is and should not be used to paint him as a bad or threatening person." (Ex. 5 at ¶ 4.)

20. Ms. Machala and others also provided new information that explains why Mr. McGibney was passing through Indiana, refuting any suggestion that he was engaged in or planning to engage in illegal or violent activity. Ms. Machala wrote:

> I am aware of allegations or suspicions that at the time of Adam's arrest, he may have been planning to engage in illegal or violent acts towards protestors or government institutions. That is not the case. Adam was only in Indiana because he was on his way to see me in New York. Before then, he had been staying with friends during a planned visit to Montana. He only left Montana because I needed help and asked him to come to New York. I had been hospitalized and did not have anyone else to go to for help. When I called Adam and explained my situation, he immediately agreed to help. He was arrested on his way.

(Ex. 5 at ¶ 5; *see also* Ex. 1 at ¶ 6 (Cross Declaration) and Ex. 2 at ¶ 6 (Brady Declaration) (confirming that Mr. McGibney was traveling to help Ms. Machala in New York).)

21. Finally, the statements affirm the writers' confidence that Mr. McGibney will abide by any restrictions placed upon him in conjunction with his requested release. (*See* Ex. 1 at ¶ 8 (Cross Declaration) ("As a police officer, I appreciate the seriousness of the charges Adam faces. Nevertheless, I can confidently say that Adam does not pose a risk of flight or violent behavior and, if released pending trial, will abide by any conditions of pre-trial supervision that the Court deems appropriate."); Ex. 2 at ¶ 7 (Brady Declaration) ("If the Court were willing to release Adam from detention while he awaits trial, I am confident that Adam would follow all rules and requirements imposed by the Court, and face the charges the government has brought against him honorably."); Ex. 3 (Elliott Letter) ("If Adam McGibney gives you his word that he will stay in town and cooperate with the court's requirements if he is released, I am willing to bet my honor as a United States Marine on it."); Ex. 5 at ¶ 6 (Machala Declaration) ("Adam is a person who

does his best to follow rules and abide by the law. The Court can trust Adam to follow the rules if he is released before his trial.").)

22. Taking into consideration this new information, coupled with Mr. McGibney's complete absence of any prior criminal record, his highly commended service to this country in the Marine Corps, and his outstanding educational record, the Court should reconsider its previous ruling and find that Mr. McGibney is an appropriate candidate for release on conditions pursuant to 18 U.S.C. § 3142(a)(2). In addition to these factors and in recognition of the Court's stated concerns, Mr. McGibney has agreed to incur the additional expense of an apartment in the South Bend/Mishawaka area so that he will have a direct connection to the Northern District of Indiana, providing Pre-Trial Services with close access to him for reporting either by phone or in person as directed. Mr. McGibney would also comply with any other reasonable conditions of bail that the Court deems appropriate.

23. Given the totality of circumstances now present in this matter, provided at the detention hearing and in this and prior pleadings,[1] conditions of bail can most certainly be imposed that would both guarantee Mr. McGibney's appearance in further proceedings in this matter and the safety of the community, including law enforcement authorities. As such, Mr. McGibney respectfully requests that the Court set reasonable conditions of bail, including that that he secure an apartment in the South Bend/Mishawaka area prior to his release and that he report as directed to Pre-Trial Services.

WHEREFORE, Mr. McGibney respectfully requests that this Court reconsider its August 14, 2020 Order on detention and grant him bail on conditions deemed appropriate pursuant to 18 U.S.C. § 3142.

---

[1] Mr. McGibney previously supplied additional material supporting his request for release (*see* Dkt. 10 (incl. exhibits); Dkt. 12 (incl exhibits); Dkt. 18; Dkt. 26.), which he adopts and incorporates by reference herein.

Dated: January 19, 2021           Respectfully submitted,

                                              ADAM D. MCGIBNEY

                                              */s/ George E. Horn, Jr.*
                                              One of his attorneys

                                              BARNES & THORNBURG LLP
                                              George E. Horn, Jr. (11721-71)
                                              Michael S. Bergerson, Jr. (35976-46)
                                              201 South Main Street, Suite 400
                                              South Bend, Indiana 46601
                                              Telephone: (574) 233-1171
                                              ghorn@btlaw.com
                                              mbergerson@btlaw.com

                                              *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 19th day of January, 2021, service of a true and accurate copy of the foregoing ***Defendant's Motion to Reconsider Order of Detention*** was served on the United States Attorney via the Court's ECF system.

                                              BARNES & THORNBURG LLP

                                              */s/ Michael S. Bergerson, Jr.*